The next matter, number 23-1695, Gloria Cucuzzo v. Trader Joe's East, Inc. et al. At this time, would counsel for the appellant please introduce himself on the record. Good morning, Your Honors. May it please the Court, my name is Timothy Perry. I'm here today to represent the plaintiff appellant, Gloria Cucuzzo. May I have a two-minute rebuttal? Yes, you may. Thank you, Your Honor. Mrs. Cucuzzo is here in the courtroom with me as well. This is an age discrimination case. Mrs. Cucuzzo is an amazing person in her 80s now who had an extraordinary career at Trader Joe's in Brookline. That store is what they call store number 501, you'll see in the record. Her performance reviews during those 17 years will show that extraordinary effort that she had. Those are at the appendix 280 to 317. Indeed, she had become somewhat of a celebrity at the store. Her managers and her co-workers, they called her the store icon in their words. Things changed in 2018 when Jennifer Gillum became the store manager. Among other things, Mrs. Gillum, sorry, Ms. Gillum, stopped doing required written performance reviews for Mrs. Cucuzzo. Those were required to be done twice per year and were not done from 2018 to 2021. In addition, seven people over the age of 40 were separated after Ms. Gillum's hire as the manager of that store from 2018 to 2021. Where is the support for that in the record? That's at appendix 492 to 497. But when I look at that, that looks like a list of all the employees. Yes, so if you look, and we cited in our brief at page 449, there was a discovery dispute between myself and counsel for the appellees in which we were saying we're going to move to compelling unless we get information about, for the last 10 years, for all employees who were employed while Ms. Cucuzzo was employed. And that would include the date of their hire and the date of their separation from employment. I was led to believe that that's what I was getting. If you see this list at 492 to 497 was attached to that email. At summary judgment and in the appellee's brief, they say that that list was just attached to the interrogatory and that that indicated people just a snapshot of the day of Ms. Cucuzzo's termination, so it doesn't reflect that prior 10 years. What I have argued is that doing that on the eve of summary judgment as well was completely unfair to Ms. Cucuzzo and myself in preparing this case because that was solely in their possession, that information. And I was led to believe, and that's what I am arguing that it supports, that for the prior 10 years, anyone who was separated from employment is on that list and with their ages. So that's where I come up with that information. Okay. I mean, that doesn't seem like not really an exact answer to the question, though. Like, we can't look at that list and say, yes, seven were terminated after she started and X number were terminated before she started. Well, you can see the dates of how old those individuals were and the dates of their termination, which fall into that. Counsel, I think the issue, though, is on summary judgment, you need to actually have evidence to sufficiently dispute what your opposing counsel is saying. And I guess what we're trying to get at is, is there anything that actually establishes that what you're saying about that document is correct other than counsel's argument, which we appreciate your making, but in terms of reviewing the district court's decision, you need to actually show admissible evidence to dispute. Sure. On that issue, it's at page 449, which is the email that attached that document, which says that this is the information for the employees that I had requested. So that's what was being requested and that's what he said he was providing. So that's what you have as an email from opposing counsel? That's right. Okay. And I would submit that that is a very small part of what we say is the evidence that supports pretext in discriminatory animus. But if I could just kind of set the stage. You probably read the briefs, I understand. We read the briefs. Could I? Sure. Not to say we don't want to hear what you have to say, but could I direct you specifically to the comparators you speak of in your briefs, and could you just address generally why they either are or not similar to your client? Sure. So, and this leads into maybe the overarching issue in the case, which is the legitimate nondiscriminatory reason that's been proffered is that my client either violated the alcohol policy or violated law. And when you look at the information, again, that was solely in their possession, we received this information only as a result of a motion to compel. But they provided to us what they said were the people who had been disciplined in this area for violations of the alcohol policy. There are only six, other than Mrs. Cacuso, who were disciplined for furnishing alcohol to a minor. And those other six are listed and we've cited them in the record. It's at 181 to 190. Each of those six were under the age of 40, and each of those six did violate the alcohol policy by failing to request identification for people who are under the age of 21. And as a result of that failure, furnished alcohol to a minor. Now, I would argue if there's a lack of a direct comparison, it's because what Mrs. Cacuso did was much less egregious. And, in fact, did not violate the law. She bought a four-pack of beer that she and her grandson had agreed. Her grandson was working later that day. But they had agreed that she was going to purchase that beer and they were going to enjoy it at her home at dinner later that evening. But to the extent that their comparison... Oh, I'm sorry. Can I just focus you on, you know, again, the comparator question? So I think everybody agrees that your client was a wonderful employee and had, you know, worked at the store successfully for years. But on this very specific question about the incident that happened, with the alcohol policy, what your opposing counsel is arguing is that these comparators are not true comparators because they don't involve knowing violations of the policy and that your client's, you know, what happened that day was a knowing violation of the policy with her grandson. So can you address that specific, very specific argument? Sure. And the first issue I take with that argument, and I take with respect to the trial court's determination of that argument in favor of the appellee, is that you have to draw an inference in favor of the appellee rather than the appellant at summary judgment in order to make that determination. Nobody testified. There's no evidence that they cite that the alcohol policy or Trader Joe's treated negligent violations of the policy different than knowing violations of the policy. Nobody testified to that, and they don't cite that. And so you have to draw an inference. It's an argument that the appellee has made successfully below, but there is no evidence of that, number one. Number two, they have said that all of these people violated the policy, including my client, by ultimately furnishing alcohol to a minor. In fact, one of the comparators actually knowingly sold beer to a co-worker who was a minor. The quote is something like, you knowingly sold a bottle of vodka to someone who was a minor. The difference they draw, the trial court and my brother draws there, is that that comparator went to the store manager immediately thereafter and kind of self-reported, I did this, I did this. But that was a purposeful knowing violation of the policy. That person was warned. There's no difference with what happened with my client. First of all, she was – Counsel, can I just go back? My understanding of the record was that the person sold the vodka, so they knew they were selling vodka, but they didn't know the age of the co-worker. So it wasn't a knowing violation of the policy. It was a knowing sale of vodka, and then the person who was underage who knew they were underage and knew they were violating the policy was fired. So, again, why is that a square comparator? Because your client knew that her grandson was not 21. You understand my question, right? I do, and I think this is at 181. This is the person selling the vodka. This is JD, right? That's who we're talking about? This is JD, yeah. I think the store personnel knew that that person was underage. The distinction with that particular person that the trial court and my brother draws is that they self-reported. That's why she self-reported. What in the record indicates that that employee knew that the co-worker was underage? Because she self-reported. She went to the store manager and said, I just sold the vodka. What in the record shows that she knew when she sold the vodka that the person she sold to was underage? Because immediately after she sold the vodka, she went and self-reported. She said, I sold this vodka to someone who was underage. And the trial court, to say that that was not a comparator with my client, said, well, she self-reported. But what that ignores is that when they asked Mrs. Cucuzzo about the sale, she immediately self-reported too. And so I think with respect to the trial court and to my brother's argument, we're putting too fine a point on these comparators because the fact of the matter is that there's no argument that they violated the alcohol policy. There is an argument of whether my client violated the alcohol policy. I say that she did not. But for all six of those comparators, there's no argument that they violated the policy  That, under the case law that I've cited, which says that comparators need to be similar. They don't need to be identical. And you could perhaps never find a comparator. I mean, what happened with Mrs. Cucuzzo was so unique. She and her grandson worked at the store. He was 19 going on 20. He often had beer at her house, which is legal under Massachusetts law. I mean, I doubt we could ever find a comparator nationwide, much less they only provided me discipline in this area for the last five years. So those are comparators. And to make the distinction, well, one was negligent and one was knowledgeable or knowing. Again, I just think it's too fine of a point because that makes it impossible for someone in Mrs. Cucuzzo's position to assert a claim in these circumstances. Your time is up, but Judge Lopez, do you have any questions?  In the trial, Joe deals with this comparator evidence in his decision. He describes why I think he's reflecting the arguments that Trader Joe's makes as to why these individuals were not terminated, that they were treated differently than your client. He looks at those explanations, and he appears to conclude that those are reasonable distinctions, and because they're reasonable, no reasonable jury could find that to be evidence of pretext, a mask for age discrimination. So are you saying that's a judgment that he was not entitled to make, and that that's not consistent with the summary judgment standard, that in doing that he was drawing basically an inference against you in a way that summary judgment precludes? Is that your position? With respect, that is our position because, as I just mentioned, there is nothing in the record to support, factually, to support those determinations other than making, in our view, in making an inference in favor of the defendants rather than the plaintiffs at summary judgment. So are you saying that he's attributing rationales for the distinction to Trader Joe's that they actually never make? Are you saying that he's actually making arguments for them as to the reasonableness of the distinction that they, in fact, never make? Is that what you're saying? I wouldn't criticize him in that way, Your Honor. With respect, what I'm saying is he drew those inferences based upon the legal argument of counsel, which was excellent legal argument, but there's nothing in the record that says the Trader Joe's ever treated negligent violations of the alcohol policy different than a knowledgeable one. And, Your Honor, I would suggest that those disciplinary records from 181 to 190 of the appendix, they all show that there's a knowing violation of the policy simply by failing to ask somebody for their identification. That is the black-letter law of the policy that says they must ask for the identification. So failing to do that, in my view, is a knowing violation of the policy. Thank you. Thank you. Thank you, Your Honor. Thank you, counsel, at this time. Counsel for the appellee, introduce yourself on the record to begin, please. Good morning, Your Honors. Steven Melnick, counsel for the appellee's defendants.  Affirm the decision below, granting summary judgment. I know Ms. Cacuso brings a lot of claims here. I'll confine myself to what seems to be what the Court is focused on, which would be the comparator issue. And, of course, if Your Honors have any additional questions about anything else, I can certainly address it. Ms. Cacuso has the burden of demonstrating that there are similarly situated comparators who are treated differently. We have to compare, as this Court has said, apples to apples. People subject to the same standards and engaged in the same conduct. There's no apple to apple exactly here. No one else in the record who purchased alcohol for a minor, as Ms. Cacuso admittedly did. We do have four employees who, as Your Honors and my brother have said, engaged in what we would say is knowing violations of the alcohol policy. Two of them gave discounts where they weren't allowed to do that. One of them rang up one can of beer instead of two. And the other one was the employee who purchased the alcohol while she knew she was underage. The policy does not list everything. It's a one-page policy. It does say that violations may range. In the event of a violation, discipline may range from written warning to termination. So there is built into it a range of discipline that may occur here. No, it doesn't say if you do this, this is the level. It's in the discretion of Trader Joe's. I'll note that Trader Joe's has been consistent in its approach towards this. All of the individuals who failed to check an ID consistently have received a warning. It's not like sometimes we terminate people on the spot for that and sometimes we let them get away with a warning. The practice, if not directly in the policy, but the practice has been if you fail to check someone's ID, you're going to get a warning, as opposed to if you commit a knowing violation such as giving someone a discount, not ringing up the right amount, buying alcohol while underage, or in this instance, knowingly taking beer from your underage grandson, going and buying it for your underage grandson. Counsel? Yes. Why, though, isn't it a knowing violation to fail to ask for an ID? The policy is very clear that you have to ask for ID for anybody who looks under age 35. Am I remembering it correctly? So the employees that didn't ask for an ID knowingly violated the policy. What's the distinction there? I think the distinction, not to be too legalistic, but it would be more negligence versus intent. So I failed to do something. I should have done something that I should have checked an ID, but I neglected to do so, and it passed through, so it passed through when they shouldn't have, versus I know that this person is underage. I am going to purchase this beer for this person. So it's the knowing whether the person is underage that you think is really the factual way that distinguishes how the comparators are treated. Let me ask you another question related to this. You have just argued, and it certainly seems to me that it was true from the policy, that the employer has discretion to decide what to do if there's a violation. So here the employer decided to use their discretion to terminate rather than give a warning. Why wasn't that potentially a question that should go to the jury, whether the plaintiff's age was a reason why the discretion was exercised to terminate rather than just give a warning? At the big picture, there's nothing else in the record, Your Honor, that would suggest that age played any role at all in this decision. That's the ultimate question here, right? It's not just is this person different from this person. It's was the reason for this termination age, and everything in the record points to the contrary. Again, this is an admitted violation that Ms. Cacuto did. The person who made the decision, Ms. Gillum, as the district court recognized, gave her a raise and a bonus and a positive review just a couple months before. The person who reviewed the decision, Mr. McGuire, promoted her a few years earlier. It strains credulity to think that we're going to give Ms. Cacuto all these positives because we harbored animus against her. And I would just come back to what this court has held, is you have to compare apples to apples. You have to treat like with like when you're focusing on the comparators. And I think the district court reached the right conclusion that these are not comparators. First we have to decide, is she being treated differently from someone who engaged in similar misconduct? And that's not the case here. Before we even get to the question of, well, why was it that she was treated differently than someone similarly situated? So that's the reason it doesn't go to the jury, because she was not treated differently than someone who was similarly situated. And I will underscore, I think it came up that the one individual who neglected to check an ID, he did immediately self-report. We think that is a significant distinction. Ms. Cacuto did not self-report as in she did not check out and then go to her boss and say, oh, I'm sorry this happened. Her boss came up to her and confronted her, and Ms. Cacuto admitted to what happened here. There's a big difference between admitting what, on your own, voluntarily admitting what you did and being confronted. So in that, I'm just a little confused about what the record is in terms of that one employee. Did that one employee, is the record that that one employee knew at the time they sold? It's unclear. If you look at Appendix 181, it just says you sold a bottle of vodka illegally in our store to a fellow crew member redacted who was underage. It doesn't say whether he knew she was underage, it doesn't say whether she didn't. There's nothing in the record one way or another as to whether he realized that she was underage. All we know is transaction happened, he realized I should have checked this ID, he went to the store manager or whomever and admitted it. Regarding the delayed performance reviews, why were they all filed in 2021? Does the record show anything about that? So we disagree that the record reflects that. Ms. Cacuso testified, this is at App 0098, that on August 2020, Ms. Gillum gave her a performance review. So that is a clear testimony that she did receive a performance review from Ms. Gillum. There is three forms in the record that have a weird 8-20-21 in the top left. They don't have their exact appendix records, but it is there, as Ms. Gillum testified, it might have been a computer issue that caused an incorrect number to be listed on that. Elsewhere in the record, it's at appendix 522, there's a spreadsheet that you'll have to zoom in to look at, but it shows when all her performance reviews were given, that they were given contemporaneously. 2018 was 2018, 2019 was 2019, 2020 was 2020. This notion that Ms. Gillum comes in and suddenly stops giving performance reviews, it's not supported by the record whatsoever. Counsel, I think one of the arguments that the plaintiff has been making is that Ms. Gillum was wrong about both what the law actually required, so whether what the plaintiff did was illegal, and second, was even wrong about whether there was even a violation of the internal alcohol policy. Can you address those two points, and whether it is ultimately relevant? Yes, Your Honor. On summary judgment, whether she in fact violated the law, or she in fact violated the alcohol policy, or whether the only relevant issue is whether Ms. Gillum reasonably believed that she did. It is the latter, Your Honor. It's only the reasonable belief, and this Court has held that in several cases that we cite. The Espinal decision, I think, is the most recent one, and the question is, what does the decision maker reasonably believe here? Not what is actually true, what turns out to be the case. It may be true, we disagree that Ms. Cacuso did not violate the law. That's not the question here about whether the law was violated or not. The question is, did Ms. Gillum believe that Ms. Cacuso violated the law by taking the beer from her grandson and buying it for her grandson while he was underage? I believe there's eight different places in the record where Ms. Gillum clearly testifies. Yes, I believe that she violated the alcohol policy, or yes, I believe she violated the law, or both. That was the consistent testimony. There's nothing in the record that would show otherwise. The one place that Ms. Cacuso points to, there's an ellipsis that hides the key point of that testimony. And so is your argument then, if Ms. Gillum reasonably believed that she was violating the law, she necessarily would have had to believe that she was violating the alcohol policy that was internal, because the internal policy said you can't violate state law, state and local law. Correct, and to put a finer point on it, that's what Ms. Gillum understood the policy to say. And again, that is what the policy says, but it's what is inside Ms. Gillum's head. Is she thinking, I want to get rid of this old person, or is she thinking the alcohol policy has been violated, so we need to do something and discipline this person. So that's the question, and everything in the record points to that Ms. Gillum, in good faith, believed that Ms. Cacuso violated the law and therefore violated the alcohol policy. Judge Lopez, do you have any questions? Yeah, just one. Thank you. As my colleagues have pointed out, it would seem that Trader Joe's was faced with a situation here where they could have chosen to give Ms. Cacuso a warning or terminate her, and they chose to terminate her. But that's why this comparator evidence becomes so important, because there we have a lot of examples where people were simply given warnings, and they were not terminated. So I understand why opposing counsel is focused on it. The district court judge, to go back to your apples to apples, apples to oranges point, the district court seems to take the position that the defendant was never able to present true comparators here because the circumstances were different. Is that your position, that because their conduct was different, failure to ask for identification, because what they did was different than what Ms. Cacuso did, they're not true comparators? I'm trying to understand why we don't have apples to apples here. To answer that direct question, Your Honor, we don't have apples to apples because no one else did exactly what Ms. Cacuso did. So we're trying to find what's close to an apple. Pears to apples, I don't know what fruit we want to talk about, but that's the issue. And I think a simple answer would be, well, there's no comparators whatsoever, so there's no comparator evidence. Again, it's Ms. Cacuso's burden to establish that there's a similarly situated person who is treated differently. But the commonality is that you seem to have a violation of what could be viewed as a, even the judge characterized it, as a no tolerance policy. You have violations of that in different ways. That seems to be the commonality. You do have a violation of this no tolerance policy. In five or six instances, Frater Joe says, well, we'll just give them a warning. But in this instance, they say, no, no, we're going to terminate. Again, as my colleagues point out, why isn't that a jury question? Why the difference in treatment? Maybe it was age. Plausibly, perhaps. Probably, perhaps it was age. Why doesn't that create a jury question? A few points, Your Honor. One, respectfully, I don't think that it is a no tolerance or zero tolerance policy. It says there's a range of discipline that's permitted under the policy. It says it can range from written warning to termination. So it's not a one strike and you're out, you're fired. And again, that's the practice. The practice of Frater Joe's is it's not one strike and you're out. I think it's a question of law here as to whether there are, the comparators are truly similarly situated. That is right for determination by the court. And we don't have to just send it to the jury on this. Is that right? Is whether the comparators are true comparators, is that solely a legal question? I know it's been decided. I don't know if this court has clearly held that one way or another, but I know it's been decided many times on summary judgment. And this court has affirmed many decisions and rejected a lot of arguments that say that these two individuals are similarly situated. So it's certainly an issue that is ripe for determination at summary judgment because the district courts and this court has decided at summary judgment many times. So it's not necessarily a question of fact that we need to kick to the jury. And I think more broadly, this court, as this court has held many times, can't sit as a quote-unquote super personnel department making the decisions, second-guessing the decisions of a company as to whether they were right or wrong, wise or unwise. Frater Joe's can rationally decide, okay, we're considering this to be negligent. We're considering failure to check an ID. That's going to be a warning. But if you go and you buy alcohol for someone knowing that they're underage, we're going to terminate you for that. That's a rational line that they can draw. And again, it's been consistent. This isn't a situation where some people committed annoying violations and gave a warning. Some people failed to check IDs and were terminated. It's been a consistent knowing violations of termination, negligent failure to check an ID is a warning. So I don't know if that answered your question, Judge Lopez. Yeah. Yeah, thank you. Thank you. Thank you, Your Honor. Is there anything else? And we will rest in our briefing. Thank you, Your Honors. Thank you, Counsel. If Counsel for the Appellant would please reintroduce himself on the record. He has a two-minute rebuttal. Good morning again, Your Honors. Again, this is Timothy Perry for the Appellant. Just to touch upon that issue of the legitimate nondiscriminatory reason they provided. As we noted, that had shifted, but they've gone into summary judgment with the proposition that this was based solely on the alcohol policy. The alcohol policy prevents sale of alcohol to someone under 21 or failing to check IDs. Then there's a catch-all that says you have to comply with all laws. But everyone has agreed, and there's a position everywhere, that Chapter 138, Section 34 provides an exception for a grandmother and a grandson with this alcohol. So there is no legitimate reason that was provided. On the issue of whether then does it fall to, does Ms. Gillum reasonably believe that there was a violation of the alcohol policy, again, our argument is that to make that determination at summary judgment, inferences were drawn in favor of Ms. Gillum rather than Mrs. Cucuzzo. And the evidence that would militate against that was Legion, but it included first, Gillum was trained on all the alcohol policy and all liquor laws, and she was the store manager, and she was charged with enforcing those laws and meeting out punishments. So to believe that she didn't understand what the alcohol policy was or that there was this exception required an inference drawn in her favor. Second, when she had the opportunity, five days after reviewing the facts of Mrs. Cucuzzo's case, and this is at Appendix 135, she drafted a termination notice. She did not say that she was being terminated for violation of the alcohol policy. She said, quote, the decision to purchase alcohol for a minor goes directly against our core value of integrity. The integrity policy is a different policy. They didn't change that reason for termination until their response to the MCAD complaint. That's when they switched to the alcohol policy as being the policy. Your time is up.  on that issue as well. Thank you, Your Honor. Thank you, Counsel. That concludes argument in this case.